**ARCHER & GREINER, P.C.**
CHRISTOPHER R. GIBSON, ESQ.
cgibson@archerlaw.com
One Centennial Square
Haddonfield, NJ 08033
(856)795-2121 Main
(856)673-7077 Fax
Attorneys for Plaintiff
NL Industries, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE**

| | |
|---|---|
| NL INDUSTRIES, INC., | Civil Case No.: 3:13-cv-03493-MAS-TJB |
| Plaintiff, | Electronically Filed |
| vs. | |
| OLD BRIDGE TOWNSHIP, et al., | |
| Defendants. | |

**BRIEF IN SUPPORT OF PLAINTIFF NL INDUSTRIES, INC.'S MOTION FOR ENTRY
OF FINAL JUDGMENT BY DEFAULT AGAINST DEFENDANTS
KANE STEEL COMPANY, METALLON HOLDINGS CORP., AUWITE
CONSTRUCTION CO., INC., AND PW ESQUIRE, CORP., INC.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................................ 1

ARGUMENT ........................................................................................................................... 6

    I.    Entry of Final Judgment by Default Against the Defaulting Defendants is Proper. ...................................................................................................................... 6

        1.    Final Judgment by Default Should Be Entered Against the Defaulting Defendants Because NL is Entitled to Recover Its Costs ........ 6

            a.    Defendants Kane Steel Company and Metallon Holdings, Inc. Are "Arrangers" Under CERCLA. .......................................... 7

            b.    Defendants Auwite Construction Co., Inc. and PW Esquire, Corp., Inc. Are "Owner/Operators" Under CERCLA. ................... 8

            c.    NL Has Established the Remaining Factors For A Prima Facie Cause of Action For the Recovery of NL's Costs ................ 9

        2.    The Defaulting Defendants Have Not Asserted a Litigable Defense. ............................................................................................... 10

CONCLUSION ...................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Hritz v. Woma Corp.,
   732 F.2d 1178 (3d Cir.1984) ..................................................................................6

Husain v. Casino Control Comm'n,
   265 F.App'x 130 (3d Cir. 2008) .............................................................................6

KFC Corp. v. Sanlin of Glassboro, Inc.,
   No. 08-2106, 2009 WL 936854 (D.N.J. Apr. 13, 2009) ........................................6

N.J. Turnpike Auth. v. PPG Indus., Inc.,
   197 F.3d 96 (3d Cir. 1999) .....................................................................................7

Napp Techs., L.L.C. v. Kiel Labs., Inc.,
   No. 04-3535, 2008 WL 5233708 (D.N.J. Dec. 12, 2008) ......................................6

Prudential Ins. Co. v. U.S. Gypsum,
   711 F. Supp. 1244 (D.N.J. 1989) ............................................................................7

**Federal Statutes**

42 U.S.C. § 9601(9) ........................................................................................................8

42 U.S.C. § 9601(14) ..................................................................................................8, 9

42 U.S.C. § 9601(20)(iii) ................................................................................................8

42 U.S.C. § 9601(21) ......................................................................................................9

42 U.S.C. § 9601(22) ......................................................................................................9

42 U.S.C. § 9601(25) ......................................................................................................9

42 U.S.C. § 9606(a) ........................................................................................................3

42 U.S.C. § 9607(a) ........................................................................................................7

42 U.S.C. § 9607(a)(1) ...................................................................................................8

42 U.S.C. § 9607(a)(3) ...................................................................................................7

**State Statutes**

N.J.S.A. 58:10-23.11, et seq. ..................................................................................4, 6, 7, 8, 9, 10

## INTRODUCTION

Plaintiff NL Industries, Inc. ("NL") filed suit against Defendants Kane Steel Company, Metallon Holdings, Inc., Auwite Construction Co., Inc., and PW Esquire, Corp., Inc. (collectively, the "Defaulting Defendants"), among other Defendants, to recover the costs NL has incurred and will incur in responding to environmental contamination of the Raritan Bay Slag Superfund Site ("RBS Site").  The Defaulting Defendants have not filed an Answer or otherwise defended this matter.  At the request of NL, the Clerk of the Court entered default against the Defaulting Defendants on August 8, 2017.  Since the entry of default, the Defaulting Defendants have not filed an Answer or otherwise defended this matter.  Therefore, NL now respectfully requests the entry of Final Judgment by Default against the Defaulting Defendants because NL is entitled to the costs NL has incurred and will incur in responding to environmental contamination at the RBS Site, the Defaulting Defendants do not have a meritorious defense, and the Defaulting Defendants have failed to file an Answer or otherwise defend the case.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

A complete recitation of the facts alleged by NL can be found in NL's Complaint filed in this matter.  See generally, 3:13-cv-3493, Doc. No. 465.  Between 1968 and 1972, amidst health and safety concerns, the Township of Old Bridge ("Old Bridge Township"), the United States Army Corps of Engineers ("USACE"), and the State of New Jersey, among others, allowed, encouraged, and aided a private developer to construct a seawall (the "Seawall") along the beachfront in Old Bridge Township's Laurence Harbor area using "slag," a waste material generated during the smelting of scrap metals.  See 3:13-cv-3493, Doc. No. 465 at ¶¶ 74-109.  During approximately the same time period that the Seawall was being constructed, a stone jetty at the Cheesequake Creek Inlet (the "Western Jetty"), originally constructed by the USACE, was allegedly reinforced and supplemented using slag.  Id. at ¶ 126.

In the decades following the construction of the Seawall and the reinforcement of the Western Jetty, the lead-bearing slag used in the respective projects was allowed to sit unprotected in a marine environment, where it was mechanically broken down by wave action and erosion. Id. at ¶¶ 6, 9, 112. The area where the Seawall construction took place and the Western Jetty was supplemented, as well as the surrounding area to which slag particles are alleged to have spread, is now a designated "Superfund Site."

In 2009, the United States Environmental Protection Agency ("USEPA") added the RBS Site to its National Priorities List of sites requiring remedial action to address contamination from hazardous substances. Id. at ¶ 141. In May 2013, the USEPA issued a Record of Decision ("ROD") designating certain response actions to be conducted at the RBS Site, with an estimated cost of $79 million. Id. at ¶ 1. The USEPA alleged that at least some of the slag in the Seawall originated from NL's former secondary lead smelter in Perth Amboy, New Jersey (the "Perth Amboy Facility"). Id. The secondary lead smelter at the Perth Amboy Facility extracted and processed lead from various lead-containing materials, including but not limited to scrap metal, dross, and lead battery plates removed from used lead-acid storage batteries. Id. at ¶ 177. The by-products of this process included furnace slag that contained lead and other metals, as well as battery casings that had lead and other metals adhering to them. Id. NL hired the Liberty Trucking Co. ("Liberty Trucking") of Fords, New Jersey, to dispose of certain waste materials from the Perth Amboy Facility, including furnace slag. Id. at ¶ 181. The USEPA alleges that slag and other waste materials Liberty Trucking removed from the Perth Amboy Facility were transported to the RBS Site and used to construct the Seawall, reinforce the Western Jetty, and fill areas behind the Seawall. Id. at ¶ 184.

On January 30, 2014, the USEPA formally demanded that NL perform the remedial design and remedial action for the remedy selected in the ROD by issuing a Unilateral Administrative Order pursuant to the USEPA's authority under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606(a).  See Doc. No. 213-8.

Since first being notified of its alleged responsibility at the RBS Site, NL has incurred a variety of response costs.  See Certification of Christopher R. Gibson, Esq. filed in support of NL's Motion For Entry of Final Judgment By Default ("Gibson Cert.") at Ex. M, ¶¶ 3-9; 3:13-cv-3493, Doc. No. 213-2 at ¶¶ 2-9.  These costs include, but are not limited to:

> a. Assisting the NJDEP and the USEPA with investigation of the RBS Site and characterization of the nature, extent, and sources of contamination.  NL's environmental consultants completed in-the-field investigations at the RBS Site or in the vicinity, including the July 13, 2009 investigation to characterize contamination at the Seawall, the June 22, 2012 investigation of background conditions in the vicinity of the RBS Site, and the July 12, 2012 sampling to analyze metal concentrations and physical characteristics of the slag at the RBS Site. These investigations were completed by NL's environmental consultants at an approximate cost of $110,000;

> b. Assisting the USEPA with the evaluation of various response action alternatives, including the EE/CA submitted to the USEPA on May 22, 2012. At the request and encouragement of the USEPA, NL's environmental consultants completed the EE/CA in order to evaluate interim measures designed to address the sources of lead at the RBS Site.  The approximate cost incurred by NL for this work was $75,000;

> c. Assisting the USEPA's efforts to keep the local community informed and involved. NL's environmental consultants prepared for and participated in numerous public meetings of the USEPA-sponsored Raritan Bay Slag Community Advisory Group. As part of the meetings, NL's consultants answered questions from community members and obtained feedback on various potential remedial alternatives being discussed for the RBS Site. This work was completed by NL's environmental consultants at an approximate cost of $35,000;

3

>   d. Identifying other Potentially Responsible Parties ("PRPs") that may be liable to perform and/or pay for cleanup and removal costs (including development of information that the USEPA used as a basis to send information requests to certain PRPs pursuant to Section 104(e) of CERCLA. This work included reviewing historical maps, photographs, deeds, and regulatory files and discussing the history of the RBS Site with various former regulators and officials from the State of New Jersey. The work included researching the former owners of portions of the RBS Site. Research was completed in order to identify smelting and associated industrial operations conducted in and around the RBS Site. Numerous public records information requests were submitted to state and federal government agencies in order to gather information related to PRPs. Research also was completed related to former customers of the Perth Amboy Facility. This work was completed by NL's environmental consultants as well as NL's counsel at a cost in excess of $125,000; and
>
>   e. Developing approaches to implement the remedy selected in the ROD, including a study of magnetic separation technology for potential use in accomplishing the selected remedy. The Study evaluated whether magnetic separation treatment technology could be used in the remediation of the RBS Site in order to reduce the amount of material requiring off-site disposal, reduce the amount of material which needed to be imported to backfill site excavations, and reduce the amount of material which needed to be placed in off-site landfills. The Magnetic Separation Study was completed by NL's environmental consultants at the suggestion and with the USEPA's encouragement at an approximate cost of $27,000.

Doc. No. 465 at ¶ 164; Gibson Cert. at Ex. M.

On June 5, 2013, NL filed suit against some of the Defaulting Defendants, various other private parties, and state and federal governmental entities under CERCLA and the New Jersey analog to CERCLA, the Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11, et seq., to recover the costs that NL has incurred, and will incur, in responding to conditions of environmental contamination at the RBS Site.  Defendant Auwite Construction Co., Inc. was named as a Defendant in NL's original Complaint filed in the case.  See Doc. No. 1.  On June 10, 2013, NL filed an Amended Complaint, making several changes, including

4

adding Defendant Metallon Holdings, Inc. See Doc. No. 4. On November 25, 2015, NL filed its Fifth Amended Complaint adding Defendant Kane Steel Company. See Doc. No. 434. Defendant PW Esquire, Corp., Inc. was named as a Defendant in NL's current, Sixth Amended Complaint. See Doc. No. 465.

The parties identified in the Complaint as "Customer Defendants" (or their predecessors) – which include Defendants Kane Steel Company and Metallon Holdings, Inc. – are among those entities that allegedly sent used batteries, scrap metals, converted antimonial lead, furnace buttons, and other waste materials containing lead and other metals to the Perth Amboy Facility during the relevant time period. See Doc. No. 465 at ¶ 179. Defendant Auwite Construction Co., Inc. was named as a Defendant because it is the current owner of property at the RBS Site. Id. at ¶ 133. Defendant PW Esquire, Corp., Inc. was named as a Defendant because it owned contaminated property at the RBS Site immediately before that property was taken by tax foreclosure by Old Bridge Township. Id. at ¶¶ 113, 175. The USEPA asserts that the land owned by Defendant Auwite Construction Co., Inc. and the land formerly owned by Defendant PW Esquire, Corp., Inc. at the RBS Site is contaminated with lead.

NL promptly served the Complaint on the Defaulting Defendants. See Gibson Cert. at ¶¶ 3, 5, 6, 7. None of the Defaulting Defendants filed an answer or otherwise defended the matter. Id. at ¶ 8. Therefore, on July 13, 2017, NL requested that the Clerk of the Court enter default. The Clerk entered default against the Defaulting Defendants on August 8, 2017. Id. at ¶ 9. Since the entry of default, the Defaulting Defendants have not filed an Answer or otherwise defended Plaintiff's Complaint in this matter. See id. at ¶ 10. Final judgment by default is appropriate because the Defaulting Defendants have failed to file an Answer or otherwise defend this matter, they have no meritorious defense, and are liable under the CERCLA and the Spill Act for the

costs NL has incurred and will incur in responding to the environmental contamination at the RBS Site.

## ARGUMENT

### I. Entry of Final Judgment by Default Against the Defaulting Defendants is Proper.

The entry of final judgment by default "is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). In deciding to enter a final judgment in default, courts typically consider whether "(1) a denial would prejudice the plaintiff; (2) the defendant appeared to have a litigable defense; and (3) the defendant's delay was caused by culpable conduct." KFC Corp. v. Sanlin of Glassboro, Inc., No. 08-2106, 2009 WL 936854, at *2 (D.N.J. Apr. 13, 2009) (quoting Husain v. Casino Control Comm'n, 265 F.App'x 130, 133 (3d Cir. 2008)). Once default is entered, as is the case here, courts will "accept as true the well-pleaded factual allegations of the complaint," in evaluating the merits of a motion for entry of final judgment by default. KFC, 2009 WL 936854, at *1 (citing Napp Techs., L.L.C. v. Kiel Labs., Inc., No. 04-3535, 2008 WL 5233708, at *3 (D.N.J. Dec. 12, 2008)).

#### 1. Final Judgment by Default Should Be Entered Against the Defaulting Defendants Because NL is Entitled to Recover Its Costs.

The entry of default judgment against the Defaulting Defendants is warranted. NL will be prejudiced if default judgment is not entered, as NL is entitled to recover the costs it has incurred and will incur at the RBS Site and NL has no other means of recovery from the Defaulting Defendants. "To present a prima facie case for the recovery of the response costs of clean-up of . . . waste, a private plaintiff must prove the following: (1) that the defendant is within one of four statutory categories of 'covered persons' liable for such costs; (2) that there has been a release or there is a threat of release of a hazardous substance from a facility; (3) which has caused plaintiff to incur clean-up and response costs; (4) that the costs expended were

6

necessary; and (5) that the responsive actions taken and the costs incurred were consistent with the National Contingency Plan." Prudential Ins. Co. v. U.S. Gypsum, 711 F. Supp. 1244, 1251 (D.N.J. 1989); 42 U.S.C. § 9607(a); see N.J. Turnpike Auth. v. PPG Indus., Inc., 197 F.3d 96, 103-04 (3d Cir. 1999).

### a. Defendants Kane Steel Company and Metallon Holdings, Inc. Are "Arrangers" Under CERCLA.

NL's Complaint alleges all of the necessary facts to establish the liability of Defendants Kane Steel Company and Metallon Holdings, Inc. as "arrangers" under CERCLA § 107(a)(3).1 Pursuant to § 107(a)(3) of CERCLA, "arranger" liability applies to:

> [a] person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility…owned or operated by another party or entity and containing such hazardous substances.

42 U.S.C. § 9607(a)(3).

Defendants Kane Steel Company and Metallon Holdings, Inc. (or its predecessor), sent used batteries, scrap metals, converted antimonial lead, furnace buttons, and other waste materials containing lead and other metals to the Perth Amboy Facility for reclamation and disposal. See Doc. No. 465 at ¶ 178. Defendants Kane Steel Company and Metallon Holdings, Inc. (or its predecessor), arranged for the treatment and/or disposal of waste material at the Perth Amboy Facility including, but not limited to, lead, chromium, antimony and arsenic pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)(3). See id. at ¶ 179. The USEPA now alleges that waste materials (including slag and battery casings containing "hazardous substances" as

---

1 The same facts that create CERCLA liability for the Defendants as "arrangers" or "owner/operators" would also establish liability under the Spill Act for each of those Defendants as a "person who has discharged a hazardous substance, or is in any way responsible for a hazardous substance" so as to be strictly liable for cleanup and removal costs at the RBS Site. See N.J.S.A. 58:10-23.11g(c)(1).

7

defined pursuant to Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and N.J.S.A. 58:10-23.11b) taken from the Perth Amboy Facility for disposal were subsequently deposited at the RBS Site.  Thus, the RBS Site is a "facility" as that term is defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).  See Doc. No. 465 at ¶ 188.

### b. **Defendants Auwite Construction Co., Inc. and PW Esquire, Corp., Inc. Are "Owner/Operators" Under CERCLA.**

NL's Complaint alleges all of the necessary facts to establish the liability of Defendants Auwite Construction Co., Inc. and PW Esquire, Corp., Inc. as "owners or operators" under CERCLA.  Defendant Auwite Construction Co., Inc. is a current owner of the portion of the RBS Site which includes the Western Jetty, the surrounding riparian land, and the adjacent upland area where there has been a "release" or "threatened release" of "hazardous substances" under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)(1).  Id. at ¶ 171.

In 1993, P.W. Esquire Corp., Inc. purchased certain real property at the RBS Site that was already contaminated with some amount of lead-bearing material.  Id. at ¶ 113.  On February 11, 1997, Old Bridge Township acquired the property at issue from P.W. Esquire Corp., Inc. by means of tax foreclosure.  Id.  USEPA has alleged that the property at issue is contaminated with lead.  Id.  "In the case of any facility, title or control of which was conveyed due to . . . tax delinquency . . . or similar means to a unit of State or local government," "owner/operator" includes "any person who owned, operated, or otherwise controlled activities at such facility immediately beforehand."  42 U.S.C. § 9601(20)(iii).  Therefore, Defendant P.W. Esquire Corp., Inc. is an "owner" of a portion of the RBS Site under Section 101(20)(iii) of CERCLA.  Id. at ¶ 174.

8

### c. NL Has Established the Remaining Factors For A Prima Facie Cause of Action For the Recovery of NL's Costs.

The Defaulting Defendants are "persons" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). Id. at ¶ 190. There has been a "release" or "threatened release" of "hazardous substances" at the RBS Site as those terms are defined in Sections 101(22) and (14) of CERCLA, 42 U.S.C. §§ 9601(14) and (22). Id. at ¶ 189. NL has incurred and will continue to incur substantial direct "cleanup and removal costs", within the meaning of N.J.S.A. 58:10-23.11b, and costs of "response", as defined under CERCLA, at the RBS Site. Id. at ¶ 164. The costs that NL has incurred and will incur in connection with actions it has taken in response to the release or threatened release of hazardous substances at the RBS Site are costs of "response" as defined by Section 101(25) of CERCLA, 42 U.S.C. § 9601 (25). Id. at ¶ 191. NL's costs of "response" at the RBS Site include those costs associated with its "removal" actions as defined by Section 101(23), "remedial actions" as defined by Section 101(24) and "response" actions as defined by Section 101(25) of CERCLA, 42 U.S.C. §§ 9601 (23), (24) and (25). Id. at ¶ 192. NL has incurred and will continue to incur substantial direct "cleanup and removal costs", within the meaning of N.J.S.A. 58:10-23.11b, and costs of "response", as defined under CERCLA, at the RBS Site. Id. at ¶ 164. All costs incurred, and to be incurred, by NL in connection with the RBS Site are necessary "cleanup and removal costs" within the meaning of N.J.S.A. 58:10-23.11b, said costs being, to the greatest extent possible, incurred in accordance with the National Contingency Plan. Id. at ¶ 165.

Costs already incurred include, but are not limited to: (1) assisting the USEPA with investigation of the RBS Site and characterization of the nature, extent, and sources of contamination; (2) working with the USEPA in evaluating various response action alternatives; (3) assisting the USEPA's efforts to keep the local community informed and involved; (4)

identifying other potentially responsible parties that may be liable to perform and/or pay for response actions; and (5) conducting studies to develop approaches to implement the remedy selected in the ROD.  See Doc. No. 213-1.  The Affidavit of Christopher T. Reitman, filed with this Court, establishes some of the costs due from the Defaulting Defendants to NL for NL's response to environmental contamination of the RBS Site.  See Gibson Cert. at ¶ 11, Ex. M.  The costs due are approximately $437,000.  Id.  In addition to the costs NL has incurred, NL also seeks recovery of the costs that it will incur in responding to environmental contamination of the RBS Site.  Id. at ¶ 12.

NL has satisfied any conditions precedent to the incurrence of response costs/cleanup and removal costs and to the recovery of those costs under CERCLA and the Spill Act.  Therefore, the Defaulting Defendants are jointly and severally liable for all response costs/cleanup and removal costs that NL has incurred and will incur at the RBS Site.

### 2. **The Defaulting Defendants Have Not Asserted a Litigable Defense.**

Liability under CERCLA is status-based – if a party falls into any of the four categories of covered persons, it is strictly liable for necessary response costs regardless of fault.  NL has demonstrated that the Defaulting Defendants are liable under CERCLA and the Spill Act, therefore they are strictly liable.  Moreover, the Defaulting Defendants have not presented any defense because they have failed to answer or otherwise defend the Complaint.  See Gibson Cert. at ¶¶ 8, 10.  No excusable reason for default has been offered by the Defaulting Defendants and the Defaulting Defendants' non-response has not been induced by NL's conduct.  Id. at ¶¶ 13, 14.

## **CONCLUSION**

For the foregoing reasons, NL requests the entry of final judgment by default and a finding of joint and several liability as to each of the Defaulting Defendants for all past costs incurred by NL and all future costs NL incurs in responding to environmental contamination at the RBS Site.

                                        ARCHER & GREINER
                                      A Professional Corporation
                                      Attorneys for Plaintiff, NL Industries, Inc.

                                      BY: s/ *Christopher R. Gibson*
                                             CHRISTOPHER R. GIBSON

Dated: November 2, 2017

212976499v1